# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

RUSSELL E. WALKER,

               Plaintiff,

     v.

CITY OF WILMINGTON,
LEGAL SERVICES
CORPORATION OF DELAWARE,

              Defendants.

: : : : : : : : : : : : : : :

C.A. No. 8607-VCP

## MEMORANDUM OPINION

Submitted: July 10, 2014
Decided: September 5, 2014

Russell E. Walker, *Pro Se Plaintiff*.

Daniel F. McAllister, Esq., Rosamaria Tassone-DiNardo, Esq., CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware; *Attorneys for Defendant City of Wilmington*.

**PARSONS, Vice Chancellor.**

This matter arises out of the condemnation of a group home by Defendant, City of Wilmington (the "City"). The home is located at 1028 West Third Street (the "Home"). Disabled Disadvantaged Delawareans Foundation ("3D") owns the Home, but it is not a party to this case. Plaintiff, Russell E. Walker, is the mortgagee[1] and operator of the Home, which provides residence for adults with various disabilities. Walker claims that the City incorrectly cited him for violating certain Wilmington City Code ("Code") provisions and enforced the Code against him in a manner that violated the Delaware Fair Housing Act ("DFHA").[2] Walker commenced this action to challenge the City's condemnation of the Home.[3]

This case is before the Court on the City's motion to dismiss. The motion seeks to dismiss the Complaint on three grounds: (1) that Walker lacks standing to

---

[1]    According to Walker and 3D's mortgage agreement, Walker is the mortgagee and 3D is the mortgagor of the Home. In his complaint, Walker refers to himself as the mortgagor, or the debtor or borrower. According to Walker's mortgage agreement, however, he is the mortgagee or the creditor or lender and 3D is the mortgagor. Black's Law Dictionary 912 (5th ed. 1979) (defining mortgagee as "he that takes or receives a mortgage"). Here, Walker holds a mortgage on the Home. For purposes of this Memorandum Opinion, I treat Walker's references to his being a mortgagor as mistaken and consider him to be the mortgagee of the Home.

[2]    6 *Del. C.* §§ 4600-4620.

[3]    Walker filed his initial complaint titled, "Verified Complaint Seeking Temporary Restraining Order," on May 30, 2013. On July 29, 2013, he filed an amended complaint (the "Complaint"), which is the operative Complaint for purposes of this Memorandum Opinion.

1

pursue certain claims; (2) that this Court lacks subject matter jurisdiction over Plaintiff's claims because he has an adequate remedy at law; and (3) that Walker failed to state a claim under the DFHA upon which relief can be granted. The City also contends that, even if Plaintiff has standing to pursue his claims, those claims must be dismissed because the relief sought is moot. Finally, the City argues that Walker's opposition to Defendant's motion to dismiss impermissibly seeks to amend his Complaint. Walker, who is representing himself, filed a written opposition to the motion to dismiss and addressed the Court during argument on that motion.

For the reasons stated in this Memorandum Opinion, I conclude that Walker has standing to pursue his claims and that his Complaint should be treated as amended by the relevant portions of his opposition.[4] I also have determined that this Court does not have subject matter jurisdiction over Count I of Plaintiff's Complaint that he was cited incorrectly for violating the Code. In addition, I find that Walker has failed to state a claim for which relief can be granted as to his

---

[4] In the course of briefing, Walker effectively amended his Complaint to abandon the relief that the City maintains is moot. Therefore, I do not address the merits of that aspect of the City's motion to dismiss. The background regarding the narrowing of the relief Walker is seeking is discussed in more detail in Section I.C *infra*.

2

claims in Count II under the DFHA and, therefore, dismiss that aspect of his Complaint. Thus, Defendant's motion to dismiss is granted.

## I.    BACKGROUND[5]

### A.    Facts

Chapter 34 of the Wilmington City Code, entitled the "Housing Code," sets forth the minimum property maintenance standards for all dwellings used for purposes of "living, sleeping, cooking or eating therein."[6] The Wilmington Department of License and Inspection ("L&I") administers and enforces the Code.[7] L&I conducts inspections, responds to citizen complaints, and enforces the Code in various ways, including through the imposition of fines and condemnation of dwellings as unfit for human habitation.[8]

---

[5]    Unless stated otherwise, the facts recited herein are drawn from the Complaint and are assumed to be true for purposes of Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Chancery Court Civil Rule of Procedure 12(b)(1)&(6) in Lieu of an Answer ("Motion to Dismiss"). Walker responded to the Motion to Dismiss in a document entitled, "Plaintiff's Reply to Defendant's Motion to Dismiss and Request that Motion be Denied." I will refer to this document as Plaintiff's opposition or answering brief and cite to it and Defendant's reply brief on the Motion to Dismiss as "PAB" and "DRB," respectively.

[6]    Wilm. C. § 34-231.

[7]    Wilm. C. § 34-61.

[8]    *Id.*

3

On October 10, 2011, L&I inspected the Home and discovered several violations of the Code. Specifically, L&I reported finding the following violations, among others:

§ 34-234: Faulty heating facilities, authorized heater inspection required (general interior)

§ 34-234: Must obtain inspection of heating system by L&I

§ 34-235: Discontinue use of room for sleeping purpose (kitchen/pantry)

§ 34-235: Discontinue use of room for sleeping purpose (living room)

§ 34-236: Replace/Repair loose ceiling and/or wall plaster (kitchen/pantry)

§ 34-266: Must obtain authorized licensed plumbing inspection (general interior)

§ 13-40: Remove source of the noxious odor (bedroom 1)

§ 34-235: Discontinue use causing overcrowded condition (general interior)

§ 34-236: Point wall(s) and/or replace missing masonry (exterior)[9]

Pursuant to its responsibility to enforce and administer the Code, L&I condemned the Home (the "October Order"), specified time limits for repairs, and described the available appeal rights.[10] In particular, the October Order[11] stated that a

---

[9] Compl. Ex. C (L&I Violation Notice, October 10, 2011). This document indicates that Walker had notice that the Home had been "declared unfit, and thus eligible for closure," at the time of the Eviction on May 22, 2013, despite no action by the City until that date. PAB ¶ 4; Compl. ¶ 5.

[10] Walker alleges that the October Order did not mention appeal rights. He did not include this allegation in his Complaint, however. Instead, Walker made

4

property owner may appeal an order and that an appeal must be filed with L&I within ten business days of receipt of an order or notice.[12] The order also indicated

___

it in an exhibit to his opposition to the City's Motion to Dismiss. PAB Ex. A at 7. For the reasons discussed in Section II.A, I find that the record on the Motion to Dismiss contradicts Walker's belated denial of having received notice and does not support a reasonable inference that he did not receive notice.

[11] The October Order only lists 3D as the "responsible party." Compl. Ex. C. It is not clear from the Complaint to what extent, if any, Walker is an owner of 3D. The Complaint does, however, describe Walker and 3D as "associates." Compl. ¶ 14. This description is appropriate considering that Walker operates and holds the mortgage on the Home. Thus, the actions taken by the City also affect Walker, who is associated with 3D. Therefore, for simplicity, references to Walker in this Memorandum Opinion should be understood to also include 3D.

[12] Def.'s Opp'n to Pl.'s Mot. to Expedite ("Def.'s Opp'n"), D.I. 14, Ex. A. The copy of the October Order attached to the Complaint does not include the back of the order which contains the appeal notice. The City, however, did file a complete copy of the October Order and it may be considered under Court of Chancery Rule 12(b)(6) because it is integral to the Complaint. *Id.*; *In re Lukens Inc. S'holder Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999) ("[T]he court may consider for certain purposes, the content of documents that are integral to or are incorporated by reference into the complaint.") (internal citations omitted) (internal quotation marks omitted). I conclude that the October Order is integral to the Complaint because Walker attached a partial copy of it to the Complaint and repeatedly referred to it in describing the City's wrongful conduct. *See*, *e.g.*, *Allen v. Encore Energy P'rs, L.P.*, 72 A.3d 93, 96 & n.2 (Del. July 22, 2013) (finding a proxy statement "integral to the [c]omplaint" where plaintiff quoted and referenced the proxy statement in making his allegations); *e4e, Inc. v. Sircar*, 2003 WL 22455847, at *3 (Del. Ch. Oct. 9, 2003) (finding a document integral to a complaint where it was referred to extensively and where "much of the wrongful conduct alleged . . . was taken directly from" the document).

5

that if an owner filed an appeal, a hearing would be scheduled before the Board of Licenses and Inspections Review ("L&I review board").[13]  Walker did not appeal the October Order to L&I.  There also is no evidence that Walker remedied the violations within the time periods specified in the October Order.[14]

### 1.    Ongoing violations

Despite the October Order, Walker continued to use the Home as a residence for disabled individuals.  According to the Complaint, the City knew about the continued use.  One of the ongoing violations, a blocked fire exit door, resulted from the actions of a resident of the Home, Roxanne Kennedy.[15]  The Complaint

---

[13]    Def.'s Opp'n Ex. A.

[14]    The October Order contained various time limits within which Walker had to remedy the identified violations.  For example, Walker had 0 compliance days with regard to the condemnation violation that no owner or operator shall let to any person for human habitation a dwelling that has been condemned.  Compl. Ex. C.  For the remaining violations, Walker had between three to seven days to comply.  *Id.*

[15]    Certain violations allegedly arose because Kennedy and her child lived in the Home without Walker's permission.  According to Walker, Kennedy tampered with the smoke detectors and also blocked a fire exit.  City police told Walker that he had to continue to house Kennedy until formal eviction proceedings took place.  By including these facts, Walker seems to suggest that he is not responsible for the blocked fire exit and smoke detector violations.  Although the Complaint contains many other details regarding the residents' conduct and Walker's responsive actions, none of these details relate to the Motion to Dismiss.  Therefore, I do not address them further.

6

also alleges that, on May 22, 2013, Kennedy removed the smoke detectors and called the Wilmington Fire Department to complain about the Home.

### 2. May evacuation

Following the call from Kennedy, the Wilmington Fire Department inspected the Home and discovered several violations of the Code. In particular, the inspection found:

(1) Path of egress doors cannot be bolt locked;
(2) Extinguishers not properly tagged and inspected;
(3) Electrical inspection needs to have an inspection and tag;
(4) House-keeping needs to be addressed;
(5) Smoke detection throughout the property needs to be addressed.[16]

As previously noted, as of May 22, 2013, Walker had not repaired the violations noted in the October Order and, despite the condemnation of the Home, he continued to use it as a residence for disabled individuals. Hence, on May 22, 2013, L&I and the Wilmington Fire Department evacuated and boarded up the Home citing multiple ongoing code violations ("May Evacuation").[17]

---

[16] Compl. Ex. D.

[17] Plaintiff accuses the City of having evacuated residents in a manner that showed "obvious intimidation and force." Compl. ¶ 4.

7

## B.    Procedural History

Walker filed his initial complaint in this action on May 30, 2013.[18]  The City filed its Motion to Dismiss pursuant to Rules 12(b)(1) and (12)(b)(6) on July 19, 2013.  Walker filed his amended complaint on July 29, 2013.  Shortly thereafter, the City indicated that its motion would apply equally to the amended complaint. This Memorandum Opinion represents my ruling on the City's Motion to Dismiss.

## C.    Parties' Contentions

Plaintiff, Walker, asserts two main claims.  First, he attacks the validity of the Wilmington Code violations by arguing that none of the violations posed or pose a current, actual safety hazard to residents of the Home ("Count I").  Second, Walker alleges the City's enforcement of the Code gave rise to three violations of the DFHA (collectively "Count II").  As to Count II, Walker asserts that the City: (1) closed the Home unlawfully "to retaliate, intimidate, coerce, interfere, and make housing unavailable for disabled persons," in violation of 6 *Del. C.* § 4600; (2) misapplied the Code provision "prohibiting overcrowded conditions," effectively denying housing for disabled individuals in violation of 6 *Del. C.* §§ 4618 and 4619; and (3) refused to "grant reasonable accommodation allowed by

---

[18]    Walker's amended complaint, which I refer to as "the Complaint," is similar to his initial complaint except that Walker added Legal Services Corporation of Delaware, Inc. ("LSCD") as a defendant.  On February 7, 2014, I granted an order dismissing Defendant LSCD.

law," in violation of 6 *Del. C.* § 4603A.[19]  According to Walker, the City's conduct caused 3D to default on its mortgage payment, thereby harming him personally.[20] Walker initially sought various forms of relief, including: (1) appointment of a neutral arbitrator to inspect the Home and to resolve any safety issues; (2) access to the Home for residents to retrieve emergency medicine and supplies; (3) an order lifting the condemnation of the Home; (4) removal of plywood from the Home's first floor; (5) an order requiring the City to cease and desist its intimidation tactics; (6) classification of the Home as a family home rather than a rooming home or rental property; and (7) compensation of $39 per day for the resulting homelessness of the residents.[21]

In response, the City moved to dismiss Walker's claims on three main grounds: (1) that Plaintiff lacks standing to pursue certain claims; (2) that this Court lacks subject matter jurisdiction over Count I because Walker has an adequate remedy at law; and (3) that Plaintiff failed to state a claim upon which

---

[19]    Compl. ¶¶ 5, 12, 2.

[20]    Plaintiff did not plead this injury in the Complaint, but for the reasons discussed in Section II.A *infra*, I treat the Complaint as amended by Walker's opposition to the Motion to Dismiss as including this alleged injury.

[21]    Compl. ¶ 19.

9

relief can be granted as to the claims under the DFHA in Count II.[22] Even if Walker has standing to pursue his claims, the City contends that his claims must be dismissed because the relief sought is moot.[23] Finally, the City argues that Plaintiff's opposition impermissibly seeks to amend his Complaint. For these reasons, the City seeks dismissal of the Complaint in its entirety.

Having considered the parties' briefs and heard oral argument on the Motion to Dismiss, I conclude that Walker lacks standing to bring claims in his own name for injuries actually suffered by disabled residents of the Home. Walker does have standing, however, to pursue claims for injuries he has suffered that are attributable to his association with the Home. Furthermore, he has an adequate remedy at law as to the alleged invalidity of the violations. Thus, I conclude this Court lacks subject matter jurisdiction as to Count I. Regarding Count II, I find that Walker has failed to state a claim for which relief can be granted under the DFHA. Therefore, I grant the City's Motion to Dismiss as to all of Plaintiff's claims.

---

[22] Mot. to Dismiss 3, 6, 8.

[23] *Id*. at 4. In his answering brief, however, Walker sidestepped the mootness argument by clarifying that he seeks relief only for himself. PAB ¶ 11. Specifically, Walker stated that he "agrees" with the City that he cannot make claims on behalf of the former residents of the Home and only seeks "relief for himself." *Id.* Therefore, because Walker did not attempt to pursue the relief that the City maintains is moot, *see* Section II.A.2 *supra,* I do not address this aspect of the City's motion to dismiss any further.

10

## II.    ANALYSIS

In considering the Motion to Dismiss, I first address the threshold issue of standing.  Next, I examine whether this Court has subject matter jurisdiction over the claims asserted in Count I.[24]  Finally, I discuss whether Walker has stated a claim in Count II for which relief can be granted.

### A.    Plaintiff has Standing to Pursue his Claims

#### 1.    Applicable standard

Standing to maintain a lawsuit "refers to the 'right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance.'"[25]  For statutes, the general "test of standing is whether: (1) there is a claim of injury in fact; and (2) the interest sought to be protected is arguably within the zone of interest to be

---

[24]    The validity of the Code provisions and the City's enforcement of them is related to subject matter jurisdiction in this case because an owner can appeal Code violations they believe were imposed incorrectly.  According to the City, this appeal process provides Walker an adequate remedy at law as to his claims that the City incorrectly cited the Home for violations of certain Code provisions.  Therefore, I analyze the issue of subject matter jurisdiction in the context of Count I only.

[25]    *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (internal citations omitted).

11

protected or regulated by the statute or constitutional guarantee in question."[26]

This analysis focuses on the statutory language itself.[27]

Applying that analysis here, I conclude that an aggrieved person under the DFHA has standing to pursue his claims.[28] The DFHA defines an "aggrieved person" as any person who:

> a. Claims to have been injured, directly or indirectly, by a discriminatory housing practice;
> b. Believes that such person will be injured, directly or indirectly, by a discriminatory housing practice that is about to occur; or
> c. Is associated with a person having a protected status under this chapter and claims to have been injured, directly or indirectly, as a result of a discriminatory housing practice against such person having the protected status.[29]

The first question, therefore, is whether Walker is such an aggrieved person.

---

[26] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994) (stating that the test for standing that applies to constitutional inquiries also applies to statutes); *Gannet Co. v. State*, 565 A.2d 895, 897 (Del. 1989).

[27] *Oceanport Indus.*, 636 A.2d at 900.

[28] *Newark Landlord Ass'n v. City of Newark*, 2003 WL 21448560, at *5 (Del. Ch. June 13, 2003).

[29] 6 *Del. C.* § 4602(2). The DFHA defines a "person" to include, *inter alia*, "[O]ne or more individuals, corporations, partnerships [and] associations." *Id.* § 4602(19).

### 2.  Plaintiff is an aggrieved person under the DFHA

Walker qualifies as an aggrieved person under §§ 4602(2)(a) and (c) of the DFHA because he: (1) claims to have been injured indirectly by a discriminatory housing practice; and (2) is associated with a person having protected status under Chapter 46 the Fair Housing Act, *i.e.*, a disabled person, and claims he was injured indirectly as a result of a discriminatory housing practice against such person. First, Walker claims to have been indirectly injured by the condemnation of the Home in that he suffered a loss of rental income from former residents of the Home. The loss of rental income allegedly made it difficult or impossible for 3D to pay its mortgage payments after the Home was evacuated and condemned. Second, Walker is associated with a protected group because he provided a mortgage to and operates the Home, which makes housing available to disabled individuals. Thus, I conclude that Walker is an aggrieved person under the DFHA.

### 3.  Plaintiff's injury allows him to seek relief under the DFHA

Initially, Walker sought through his Complaint to pursue relief on behalf of the Home's residents, such as access to the Home to obtain medical supplies and compensation of $39 per day for having been made homeless. The City then moved to dismiss the Complaint for lack of standing, arguing that Walker's request for relief on behalf of former residents is impermissible because the injuries

suffered are not Plaintiff's personal losses but, rather, those of the Home's residents.

Although I agree with Defendant that Walker cannot seek relief on behalf of the residents, Walker clarified in his opposition that he only seeks relief for himself, and is not bringing an action for the residents of the Home.[30] Thus, Walker has abandoned any claims seeking relief on behalf of the former residents.

Because Walker did not make clear that he was seeking relief only on his own behalf until his opposition, he arguably failed to comply with Court of Chancery Rule 15(aaa).[31] Indeed, the City seeks to preclude Walker's clarification of the relief he seeks on the basis of Rule 15(aaa).[32] Because this case involves a self-represented plaintiff, a relatively technical legal argument, and a proposed "amendment" that simplifies the analysis for the Court and Defendant, however, I do not consider it just under all the circumstances effectively to preclude Walker from limiting his Complaint to seeking relief only for alleged harm that he suffered himself. Walker claims that the City's actions caused him injury by diminishing

---

[30]    PAB ¶¶ 10, 11.

[31]    Ct. Ch. R. 15(aaa) (stating that a party wishing to amend a pleading must do so no later than the time such party's answering brief in response to a motion to dismiss the pleading under Rule 12(b)(6) is due).

[32]    DRB 7.

14

his mortgage income.[33] Thus, I conclude that Plaintiff is an "aggrieved person" injured under the DFHA, and has standing to pursue his § 4603 claims.

The City also argues that Walker lacks standing to bring an action pursuant to 6 *Del. C.* § 4603A because he is not a "disabled person." Defendant draws a distinction between Section 4603, which explicitly references claims by an "aggrieved person" under the DFHA, and Section 4603A, which refers only to "discrimination on the basis of an individual's disability." The latter statute defines discrimination to include "[A] refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."[34] Federal case law interpreting the identical provision in the Fair Housing Amendments Act[35] ("FHAA") is instructive as to whether standing to pursue a

---

[33]    PAB ¶ 12.

[34]    6 *Del. C.* § 4603A.

[35]    The FHAA amends The Fair Housing Act of 1968, which prohibits discrimination on the basis of race, color, religion, sex, or national origin in housing sales, rentals or financing, by extending its protections to persons with disabilities and families with children. *See* 42 U.S.C. §§ 3601-3619.

claim under the "reasonable accommodations" provision is limited to only disabled individuals.[36]

For instance, in *Hovsons, Inc. v. Township of Brick,* a nursing home developer brought an action against the township and zoning board, alleging that the denial of a conditional use permit violated the FHAA.[37] The court held that the township's refusal to grant a variance to build a nursing home violated the FHAA requirement that municipalities provide reasonable accommodations to handicapped persons. The FHAA reasonable accommodation provision provides in pertinent part:

> [F]or the purposes of this subsection, discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford

---

[36] Due to the paucity of case law interpreting DFHA provisions, Delaware courts often look for guidance to federal decisions construing identical or parallel provisions of the FHAA. *See Saville v. Quaker Hill Place*, 531 A.2d 201, 203 (Del. 1987) (relying on various federal antidiscrimination statutes to determine what elements must be proven under 6 *Del. C.* §4603); *Samuelson v. Mid-Atl. Realty Co.*, 947 F. Supp. 756, 759 & n.3 (D. Del. 1996) (stating logic dictates that the Delaware Supreme Court would employ the same reasoning as the federal courts in interpreting the FHAA and therefore applying the analysis of an analogous FHAA issue to the plaintiff's DFHA claims). When necessary, therefore, I supplement my analysis of the DFHA provisions with relevant federal cases interpreting the FHAA.

[37] *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1099 (3d Cir. 1996) (interpreting 42 U.S.C. § 3604(f)(3)(B)).

16

such a person equal opportunity to use and enjoy a dwelling . . . .[38]

The court found that although Hovsons was asserting claims of the "John Doe" plaintiffs who would reside in the nursing home, the FHAA "permit[ed] such broad assertions of third-party standing,"[39] and that "an aggrieved person does not necessarily have to be the person discriminated against."[40]  Thus, the court there held that requirements for standing to sue under the FHAA can be satisfied by a plaintiff who is injured himself, or is associated with a person in a protected group who is injured, by the challenged action.[41]  Following the reasoning of *Hovsons, Inc.* on this point, I similarly find, for purposes of 6 *Del. C.* § 4306A, that Walker may bring a claim even though he is not a "disabled person."

There is no dispute that Walker sustained actual injury because the City condemned the Home.  Although 3D actually owns the Home, Walker is a

---

[38]    42 U.S.C. § 3604(f)(3)(B).  This language is nearly identical to that of 6 *Del. C.* § 4603A.

[39]    *Hovsons, Inc.*, 89 F.3d at 1099 n.2.

[40]    *Id.* (citing *Growth Horizons, Inc. v. Del. Cty.*, 983 F.2d 1277, 1282 n.6 (3d Cir. 1993).

[41]    *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (indicating that Congress intended standing for civil rights claims to "extend to the full limits of Art. III," and, thus, courts lack authority to create prudential barriers to standing in suits brought under that section)).

mortgagee of the Home. Thus, it is reasonable to infer from the allegations in the Complaint that, before the condemnation and evacuation, Walker at least indirectly received rental income from the residents of the Home. As a result of the condemnation and evacuation, however, Walker suffered a loss of that income. Therefore, while Walker himself is not a disabled person, he suffered at least an indirect injury caused by the challenged actions of the City. I conclude, therefore, that Plaintiff has standing to bring a "reasonable accommodations" claim under 6 *Del. C.* § 4603A.

**B.     The Court of Chancery does not have Subject Matter Jurisdiction over Count I**

**1.     Applicable standard**

The Court of Chancery will dismiss an action under Rule 12(b)(1) "if it appears from the record that the Court does not have subject matter jurisdiction over the claim."[42] The plaintiff "bears the burden of establishing this Court's jurisdiction, and where the plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, he must support those allegations with competent proof."[43]

---

[42]     *AFSCME Locals 1102 & 320 v. City of Wilm.,* 858 A.2d 962, 965 (Del. Ch. 2004) (internal citation omitted).

[43]     *Yancey v. Nat'l Trust Co.,* 1993 WL 155492, at *6 (Del. Ch. May 7, 1993) (internal citation omitted).

This Court is one of limited jurisdiction.[44] The Court of Chancery can acquire subject matter jurisdiction over a case in three ways: (1) the invocation of an equitable right;[45] (2) a request for an equitable remedy when there is no adequate remedy at law;[46] or (3) a statutory delegation of subject matter jurisdiction.[47] This Court "will not exercise subject matter jurisdiction 'where a complete remedy otherwise exists but where plaintiff has prayed for some type of

---

[44] The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment. *See Appoquinimink Educ. Ass'n v. Appoquinimink Sch. Dist.,* 2003 WL 1794963, at *3 n.24 (Del. Ch. Mar. 31, 2003).

[45] *See* 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."); *Christiana Town Ctr. LLC v. New Castle Cty.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003) ("Equitable rights are rights that have traditionally not been recognized at common law. The most common example of equitable rights in this court are fiduciary rights and duties that arise in the context of trusts, corporations, other forms of business organizations, guardianships, and the administration of estates."); *Azurix Corp. v. Synagro Techs., Inc.,* 2000 WL 193117, at *2 (Del. Ch. Feb. 3, 2000).

[46] 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."); *Christiana Town Ctr.,* 2003 WL 21314499, at *3 ("Equitable remedies . . . may be applied even where the right sued on is essentially legal in nature, but with respect to which the available remedy at law is not fully sufficient to protect or redress the resulting injury under the circumstances.") (internal quotation marks omitted).

[47] *See Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 997 (Del. 2004).

19

traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery.'"[48]

The party seeking a court's intervention bears the burden of establishing the court's subject matter jurisdiction,[49] and the court may consider evidence outside the pleadings in resolving that issue.[50] Further, "[i]n deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[51] In other words, "the court must address the nature of the wrong alleged and the available remedy to

---

[48] *Christiana Town Ctr.,* 2003 WL 21314499, at *3 (quoting *IBM Corp. v. Comdisco, Inc.,* 602 A.2d 74, 78 (Del. Ch. 1991)).

[49] *Maloney-Refaie v. Bridge at Sch., Inc.*, 2008 WL 2679792, at *7 (Del. Ch. July 9, 2008) (quoting *Ropp v. King,* 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007)).

[50] Ct. Ch. R. 12(b)(1); *Sloan v. Segal,* 2008 WL 81513, at *6 (Del. Ch. Jan. 3, 2008) (citing *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *5 (Del. Ch. Oct. 19, 2000)); *see also Maloney-Refaie*, 2008 WL 2679792, at *7 (citing *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 n.15 (Del. Ch. Apr. 27, 2007)).

[51] *Candlewood Timber Gp.,* 859 A.2d at 997; *see also Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 588 (Del. 1970).

determine whether a legal, as opposed to an equitable remedy, is available and sufficiently adequate."[52]

## 2. Plaintiff had an adequate administrative remedy

In addition to a possible claim for money damages, Walker evidently continues to seek the following relief: (1) appointment of a neutral arbitrator to inspect the Home and to resolve any safety issues; (2) an order lifting the condemnation of the Home; (3) an order to cease and desist from intimidation tactics; and (4) classification of the Home as a family home rather than a rooming home or rental property. The City maintains that Walker had an adequate remedy at law because he had the right to appeal the disputed violations to the L&I review board. Therefore, according to Defendant, Walker has no basis to invoke this Court's limited subject matter jurisdiction. I focus first, therefore, on whether Walker had an adequate remedy at law which would defeat his effort to come within the subject matter jurisdiction of this Court.

Delaware law strongly favors the exhaustion of administrative remedies before resorting to judicial intervention.[53] Hence, "where a remedy before an

---

[52] *IMO Indus., Inc. v. Sierra Int'l, Inc.*, 2001 WL 1192201, at *2 (Del. Ch. Oct. 1, 2001).

[53] *Christiana Town Ctr.*, 2003 WL 21314499, at *4 (holding that a statutory remedy at law exists where a land use application could be appealed to the Planning Board).

administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy."[54] This requirement allows an administrative agency to apply its expertise and discretion, and possibly to resolve a conflict without judicial intervention. The exhaustion doctrine, however, is not "a jurisdictional or an absolute requirement [, but] a judicially created doctrine which courts exercise discretionally."[55]

### 3. Plaintiff failed to exhaust his administrative remedy

Although the City asserts that the appeal process provides an adequate remedy at law, Walker disagrees and contends that appealing to the L&I review board is costly, time-consuming, and expensive in that he is suffering ongoing harm.[56] In addition, Plaintiff alleges that the appeal process does not provide for injunctive relief and that the L&I review board is not "neutral." Thus, Walker maintains that the appeal process does not constitute an adequate remedy.

For an adequate remedy at law to exist, the remedy "must be [as] complete, practical, and efficient to the ends of justice and to its prompt administration as the

---

[54] *Id.*

[55] *SimplexGrinnell, L.P. v. Del. Dep't of Labor*, 2012 WL 5362835, at *4 (Del. Ch. Oct. 31, 2012).

[56] PAB ¶ 26; PAB Ex. A at 7.

22

equitable remedy."[57]  The administrative remedy available to Walker as to the noticed violations was an appeal to the L&I review board.[58]  Plaintiff's decision to bypass the administrative review process, however, deprives the Court of information on which it could base a determination that the available review process is inadequate.[59]  As stated in *SimplexGrinnell, L.P. v. Delaware Department of Labor*:

> Proper use of administrative remedies provides not only
> an opportunity for the grievant to be heard, but also for

---

[57]  *SimplexGrinnell, L.P.*, 2012 WL 5362835, at *7 (Del. Ch. Oct. 31, 2012). Walker also appears to allege that the October Order did not contain an appeal notice.  Plaintiff makes this allegation in the form of a handwritten notation on an exhibit attached to his reply brief, rather than in the Complaint.  PAB Ex. A at 7.  Wilmington City Code § 34-113, however, provides that "[a]ny owner affected by any notice relating to the condemnation of a dwelling may request and shall be granted a hearing before the L&I review board."  Relatedly, Section 5-705 of the Wilmington City Charter provides that any person aggrieved by a notice or order resulting from an inspection may appeal the matter to L&I.  Wilm. C. (Charter) § 5-705.  Thus, in publicly available documents, the City provides two avenues for an owner to appeal a disputed violation to the L&I review board.  Based on this circumstance and the fact that the October Order referred to in the Complaint included on the reverse side a notice of Walker's appeal rights, I conclude that Walker could not conceivably show, based on the record before me, that he was unaware of his appeal rights.

[58]  There is no dispute that the time limit to appeal the October Order has lapsed.  Walker, however, need only request L&I to inspect the property again for another violation notice to be issued.  Walker then could appeal virtually the same issues as to that notice.

[59]  2012 WL 5362835, at *8.

the Court to attain a greater understanding of the particular administrative process and its adequacy or inadequacy. When this process is circumvented, the reviewing court is left with a hole in the record that both sides attempt to fill with speculation—a matter that leaves courts suspicious at least, uncomfortable at best.[60]

Here, because Walker failed to exhaust his administrative remedies and also did not provide any facts to support his conclusory allegation that the L&I review board is not neutral or that the appeal process would not provide injunctive relief, the Court would have to engage in speculation to conclude that the appeal process is inadequate. Thus, Walker has not met his burden of proving subject matter jurisdiction. I hold, therefore, that the appeal process provides Plaintiff with an adequate remedy at law and find that this Court lacks subject matter jurisdiction as to Count I.[61]

## C.    Count II Fails to State a Claim for which Relief can be Granted

Count II does not suffer from the subject matter jurisdiction problems applicable to Count I because Walker would not be able to appeal to the L&I review board his claims that the City violated the DFHA when it provided notice

---

[60]    *Id.*

[61]    I dismiss Count I of the Complaint with prejudice for lack of subject matter jurisdiction. Walker conceivably may have a right to transfer this action to another court for hearing and determination pursuant to 10 *Del. C.* § 1902. I express no opinion on that issue, however.

24

of the violations at the Home and later closed it based on them.[62]  Therefore, I turn

to the City's challenges to Count II under Rule 12(b)(6).

### 1.     Applicable standard

Pursuant to Rule 12(b)(6), this Court may grant a motion to dismiss for

failure to state a claim if a complaint does not assert sufficient facts that, if proven,

would entitle the plaintiff to relief.   "[T]he governing pleading standard in

Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[63]  That is,

when considering such a motion, a court must

> accept all well-pleaded factual allegations in the
> Complaint as true, accept even vague allegations in the
> Complaint as "well-pleaded" if they provide the
> defendant notice of the claim, draw all reasonable
> inferences in favor of the plaintiff, and deny the motion
> unless the plaintiff could not recover under any
> reasonably conceivable set of circumstances susceptible
> of proof.[64]

This reasonable "conceivability" standard asks whether there is a "possibility" of

recovery.[65]  If the well-pled factual allegations of the complaint would entitle the

---

[62]    DRB 8.

[63]    *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d
531, 537 (Del. 2011) (footnote omitted).

[64]    *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del.
2002)).

[65]    *Id.* at 537 & n.13.

25

plaintiff to relief under a reasonably conceivable set of circumstances, the court must deny the motion to dismiss. The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[66] While courts liberally construe pro se complaints, self-represented litigants still must allege sufficient facts to state a plausible claim for relief.[67]

Generally, the Court will consider only the pleadings on a motion to dismiss under Rule 12(b)(6). "A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint; or (2) the document is not being relied upon to prove the truth of its contents."[68]

---

[66] *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[67] *See Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *5 (Del. Ch. Jan. 2, 2013) (explaining that although pro se pleadings may be judged by a less stringent standard than those filed by an attorney, proceeding pro se will not "relieve [the] [p]laintiff[] of [his] responsibility to present and support cogent arguments warranting the relief sought" or "excuse [him] from complying with the procedural rules of the Court").

[68] *Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

**2.**     **Plaintiff fails to allege sufficient facts to state a cause of action under the DFHA**

Walker asserts that the City violated three provisions of the DFHA. First, he argues that the City denied "housing" in violation of 6 *Del. C.* § 4603. Second, he states that the City engaged in a "campaign of intimidation, harassment, coercion and interference" in violation of 6 *Del. C.* §§ 4318 and 4319. Finally, he argues that the City refused to "grant reasonable accommodation allowed by law" in violation of 6 *Del. C.* § 4603A. For purposes of clarity, I categorize the sub-claims under the DFHA as follows: (i) claims for disparate impact and reasonable accommodation, and (ii) a claim for unlawful retaliation. The City has moved to dismiss Count II for failure to state a claim for which relief can be granted. For the reasons discussed below, I find that Walker has not stated a cognizable claim for relief under the DFHA.

Walker fails to state a claim in Count II because the Complaint merely recites certain provisions of the DFHA and makes conclusory statements without alleging specific facts that conceivably could enable him to succeed in proving his claims that the City violated those provisions. Additionally, even if Walker's claims had been pled sufficiently, they nonetheless would fall within the exception contained in 6 *Del. C.* § 4607(c).

### a.       DFHA Sections 4603 and 4603A

Two types of discrimination claims exist under Section 4603: (1) discriminatory treatment; and (2) disparate impact.[69]  A claim by an aggrieved person that a statute or ordinance impermissibly discriminates on its face is a form of discriminatory treatment claim.  In contrast, when a decisionmaker's "practices are facially neutral" in their treatment of different groups but actually unjustifiably disadvantage one or more groups, "a claim for disparate impact exists."[70]  In this case, Walker does not allege that the Code is discriminatory on its face.  For Count II to stand, therefore, Plaintiff must have alleged sufficient facts to support a conceivable claim that the City's enforcement of the Code disparately impacts disabled individuals.

To the extent Walker asserts a disparate impact claim, he must allege facts that would support a reasonable inference that the City's Code enforcement "otherwise make[s] unavailable" or effectively "den[ies]" housing to disabled individuals.[71]  In other words, the appropriate inquiry focuses on what impact the

---

[69]    *Newark Landlord Ass'n v. City of Newark*, 2003 WL 21448560, at \*10 (Del. Ch. June 13, 2003).

[70]    *Id.*

[71]    *Hallmark Developers, Inc. v. Fulton Cty.*, 466 F.3d 1276, 1283 (11th Cir. Oct. 12, 2006).

28

challenged policy or decision would have on the group as a whole. While no single test controls, typically disparate impact is demonstrated by statistics showing a disproportionate burden on a protected group.[72] A plaintiff can make a prima facie disparate impact case by pleading facts that show the facially neutral government action "had a greater adverse impact on the protected group [t]han on others."[73]

Walker's disparate impact argument attempts to draw a distinction between a "rooming home" and a "family home" for purposes of overcrowding under Wilm. C. § 34-235. The Complaint alleges that the City's characterization of the Home as a "rooming home," instead of a "family home," disparately impacts group homes and their residents.[74] In particular, the Complaint avers that in a "rooming home," no more than four unrelated people may occupy the home. Walker further contends that, in contrast, the number of people is irrelevant in a family home, as

---

[72] *Id.* at 1285; *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 380 (3d Cir. 2011); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 570 (2d Cir. 2003); *see Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir. 1987) (finding no prima facie case of disparate impact where wrong base population was used in a statistical sample).

[73] *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 467 (3d Cir. 2002)

[74] Compl. ¶ 12.

long as the home provides at least a minimum habitable square footage per person.[75]

The overcrowding ordinance that the Home was found in violation of states: "[N]o person shall *occupy or let to another for occupancy* any dwelling or dwelling unit for the purpose of living therein, which does not comply with the following requirements . . . ."[76] Thus, the square footage spacing provision applies equally to both owner-occupied homes, which would include single family homes, and rental properties.

Walker cannot state a claim for disparate impact by merely reiterating his conclusory allegation that a family home is subject to different requirements than a rooming home. Walker fails to plead any facts giving rise to an inference that the enforcement of the housing code as written causes a "greater adverse impact" on

---

[75] I note here that Walker's citation to *City of Edmonds v. Oxford House, Inc.* is inapposite. Plaintiff incorrectly suggests that case "holds only a square foot metric for overcrowding [may be used] if residents are disabled." PAB ¶ 7. *See City of Edmonds*, 514 U.S. 725, 731 (1995). The sole question before the Court in that case was "whether Edmonds' family composition rule qualifies as a 'restrictio[n] regarding the maximum number of occupants permitted to occupy a dwelling' within the meaning of the FHA's absolute exemption [42 U.S.C. § 3607(b)(1)]." *Id. See also id.* at 737-38 (answering that question in the negative, expressly not passing on the validity of the 'family composition rule' or single-family zoning use restrictions, and remanding to the district court on the issue of whether any discrimination occurred for purposes of the FHA.)

[76] Wilm. C. § 34-235 (emphasis added).

disabled persons as a group than on any other group of persons in the population at large. At most, Walker's argument boils down to a complaint that the City incorrectly applied the overcrowding ordinance in his particular case, either by wrongly calculating the available square footage of floor space per resident or by wrongly finding the persons living in the Home not to constitute a single family for purposes of the City Code.[77] This is a rehash of the substance of Walker's claims in Count I, but as discussed *supra*, the Court does not have subject matter jurisdiction over the claims in Count I because Walker failed to exhaust his administrative procedural remedy. Even assuming the Home was subject to different requirements than a family home, Plaintiff has not alleged any fact, statistical or otherwise, from which this Court reasonably could infer that the City's enforcement of the Code as it is written has a disproportionate impact on the disabled.

Additionally, the City's actions in enforcing Wilm. C. § 34-235 against Walker falls within the exception contained in 6 *Del. C.* § 4607(c). That Section states in pertinent part:

> Nothing in this chapter limits the applicability of any reasonable local, state or federal restrictions regarding the maximum number of occupants permitted to occupy a

---

[77] See PAB ¶ 12 ("Defendants misapplied the City ordinance, with the effect of denying housing for disabled individuals.")

dwelling as long as they are applied to all occupants and do not operate to discriminate or have the effect of discriminating on the basis of race, color, national origin, religion, creed, sex, marital status, familial status, age, sexual orientation or disability.

As stated above, the overcrowding ordinance applies to all occupants, whether renters or owners. It merely imposes a minimum amount of square footage for every room occupied for sleeping purposes, and prohibits use of cellar and basement spaces as habitable rooms unless they fully comply with building code requirements. This requirement applies regardless of whether the occupants are renters or owners, or in a protected class.

Walker has failed to allege facts that would allow the Court to make a reasonable inference that the Home, as a residence for the disabled, was treated differently than any other residence. He does not allege a single instance in which the City failed to enforce the cited violations against those not associated with disabled individuals. Because the ordinance makes no distinction between the disabled and the population at large, and Plaintiff has not alleged any facts giving rise to a reasonable inference that the application of the ordinance has had a disparate impact on any protected class, I conclude that Plaintiff has not stated a

claim that the City applied or enforced its Code in a manner that violated the DFHA.[78]

Likewise, the other Code provisions Walker was cited for violating do not distinguish between rental properties and family homes.[79] For example, Section 34-234 of the Code governs light, ventilation, and heating requirements. It states in relevant part, "No person shall *occupy as owner-occupant or let to another for occupancy* any dwelling or dwelling unit, for the purpose of living therein, which does not comply with the following . . . ."[80] Indeed, the provisions 3D was cited

---

[78] *See Oxford House-C v. City of St. Louis*, 77 F.3d 249, 252 (8th Cir. 1996) ("Having concluded Oxford House did not show the City treated the Oxford Houses differently from any other group, we believe the City's enforcement actions were lawful regardless of whether some City officials harbor prejudice or unfounded fears about recovering addicts."); *see also United States v. Armstrong*, 517 U.S. 456, 465 (1996) (explaining that a plaintiff bringing a selective-enforcement claim based on race "must show that similarly situated individuals of a different race were not prosecuted").

[79] *See, e.g.*, Wilm. C. §34-234.

[80] *See* Wilm. C. § 34-234 ("No *owner or operator shall let to any person* for human habitation and *no person shall occupy* any dwelling or dwelling unit which has been condemned and placarded") (emphasis added); Wilm. C. § 34-235 ("No person shall *occupy or let to another for occupancy* . . . .") (emphasis added); Wilm. C. § 34-266 (No dwelling or dwelling unit shall be deemed to comply . . . ."); Wilm. C. § 13-40 ("it shall be unlawful for any person to maintain any cellar, vault, drain, sewer . . . that shall be nauseous or offensive to others . . . ."); Wilm. C. § 34-231 ("No person shall *occupy as owner-occupant or let to another for occupancy* any dwelling or dwelling unit . . . .") (emphasis added). The October Order also included a citation for violating Section 34-236, entitled "Responsibility of owners." This

for violating are under Articles II and III of the Housing Code rather than Article IV, which only applies to "rooming homes."[81] Here again, Walker fails to allege any facts that support a reasonable inference that the Code's enforcement disparately impacts disabled individuals. While a court assessing a motion to dismiss must assume the truthfulness of well-pled allegations contained in the complaint, it need not accept conclusory allegations unsupported by specific facts.[82] Therefore, I find that Plaintiff has failed to state a claim that enforcement of the relevant Code provisions would violate 6 *Del. C.* § 4603. Hence, I dismiss with prejudice the claims stated under § 4603 of the DFHA.

Second, Walker claims that the City's enforcement of the Code violates Section 4603A, which states that discrimination based on disability includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a protected] person equal

---

provision also does not distinguish between owner-occupants and owner-operators. Rather, the provision prescribes minimum standards for all owners. Therefore, the provision likewise does not create a distinction between a family home and a rooming home. *See* Wilm. C. § 34-236 ("No person shall own a building which does not comply with the following requirements . . . .").

[81] *Compare* Wilm. C. art. III (entitled "Minimum Standards and Requirements"); *with* Wilm C. art. IV (entitled "Hotels and Rooming Houses").

[82] *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

opportunity to use and enjoy a dwelling."[83]   Similarly, under the FHAA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a protected] person equal opportunity to use and enjoy a dwelling . . . ."[84]

To establish a claim for failure to provide a "reasonable accommodation" under the FHAA, a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.[85]

As discussed *supra*, through his association with 3D and the Home, Walker has standing to bring his claim even though he is not a "disabled individual." Therefore, the first element is met.  Plaintiff is required, however, to allege facts to support an inference that "accommodation of the handicap 'may be necessary.'" That is, he must allege facts indicating that "but for the accommodation, [the disabled] w[ould] likely be denied an equal opportunity to enjoy the housing of

---

[83]   6 *Del. C.* § 4603A(a)(2).

[84]   42 *U.S.C.* § 3604(f)(3)(B).

[85]   *Budnick v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008) (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

their choice."[86]   Here, Walker has not alleged sufficient facts to support a reasonable inference that the disabled former residents of the Home *necessarily* were denied an equal opportunity to enjoy the housing of their choice due to the City's condemnation of the Home.   Thus, he has failed to state a claim under Section 4603A, and I also will dismiss that aspect of Count II pursuant to Rule 12(b)(6).

### b.   DFHA Sections 4618 and 4619

Section 4618 of the DFHA states that "it shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by § 4603, § 4604, § 4605 or § 4606 of this title."[87] Section 4619 states that "whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with," a protected class under the DFHA shall be subject to fines or imprisonment.   Like the DFHA, the FHAA prohibits retaliation against persons exercising rights afforded to them by the FHAA.[88]   Courts have interpreted the FHAA to prohibit otherwise lawful

---

[86]   *Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d at 1380 (quoting *Smith & Lee Assocs. v. City of Taylor*, 102 F.2d 781, 795 (6th Cir. 1996)).

[87]   6 *Del. C.* § 4618.

[88]   The FHAA's retaliation statute states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right

governmental actions, like code enforcement, when undertaken for a discriminatory purpose.[89] To state a cause of action for retaliation in violation of either the FHAA or the DFHA, a plaintiff must allege: (1) that he or she engaged in a protected activity; (2) that he or she suffered adverse actions; and (3) that the adverse action was causally related to the protected activity.[90]

Walker contends he was engaged in a protected activity through his involvement in the Home and 3D generally. In particular, Walker points to lawsuits in which he and 3D have been involved ostensibly to protect his and 3D's rights. Walker argues that these suits are the basis for retaliation because the City

---

granted or protected by . . . this title." 42 U.S.C. § 3617. Federal case law involving such retaliation claims is sparse. *Simoes v. Wintermere Pointe Homeowners Assoc., Inc.*, 2009 WL 2216781, at *6 (M.D. Fla. July 22, 2009) ("Very few courts have addressed the particulars of a § 3617 claim, and the law in this circuit is sparse."). Because of the similarity between the relevant Delaware and federal statutes, I consider the few federal cases interpreting the retaliation statute under the FHAA instructive as to the requirements to state a claim for retaliation under the DFHA.

[89] *See, e.g., United States v. City of Parma*, 494 F. Supp. 1049, 1099 (N.D. Ohio 1980), *aff'd*, 661 F.2d 562 (6th Cir. 1981), *cert. denied,* 456 U.S. 926 (1982) (finding that City of Parma engaged in a pattern and practice of racial discrimination in violation of the FHAA by severely restricting low income housing opportunities through land use ordinances).

[90] *Hous. Opportunities Project for Excellence Inc. v. Key Colony No. 4 Condo. Assoc., Inc.,* 510 F. Supp. 2d 1003, 1013 (S.D. Fla. 2007).

"considers [Walker and 3D] one and the same."[91]  The alleged retaliation took the form of the City's condemnation of the Home (the May Evacuation).  Though Walker points to two actions as having prompted the retaliation, I cannot reasonably infer that either is causally linked to the City's actions in the May Evacuation.

The first instance to which Walker refers is a lawsuit brought on April 1, 2013, by a former inhabitant of a 3D-owned property on 811 Brown Street.[92]  The inhabitant, Richard Parades, sued the City on DFHA claims after a City citation ordering that residents cease using the living room as a sleeping area led to 3D evicting Parades.  There is no mention of Walker or the Home at 1028 West Third Street, and the only connection between the Parades case and the one at hand is that Parades had lived in a (different) 3D home.  Aside from this highly attenuated connection, there are no facts asserted in the Complaint that support Walker's claim that the City retaliated for the *Parades* lawsuit by evacuating the Home.

The second instance that Walker points to, and attaches as Exhibit B to his original complaint, is the eviction action he brought in Justice of the Peace Court

---

[91]     PAB ¶ 5.

[92]     Complaint ¶¶ 2, 6, 7, *Parades v. Thomas*, C.A. No. N13C-03-297 RRC (Del. Super. Mar. 25, 2013).

against a tenant, Kennedy.[93]  Walker alleges that because of this eviction action as well as a report that Walker made to the Delaware Department of Family Services regarding Kennedy's treatment of her child, on May 22, 2013, Kennedy removed the smoke detectors in the Home before calling the Fire Department to report the Home for violations.[94]  Even if, as Walker alleges,  Kennedy may have "retaliated" against him for filing the eviction proceedings, the City was not a party to that lawsuit and nothing in the Complaint supports a reasonable inference that those events might have caused the City to retaliate against Walker by requiring the evacuation of the Home.[95]

I find, therefore, that Walker has failed to allege that the City's condemnation of the Home is causally related to his protected activity in operating

---

[93]    Compl. Ex. B, ¶¶ 10, 11.

[94]    Compl. ¶¶ 10, 11.

[95]    I note that Walker also is pursuing two lawsuits in Superior Court, but neither provides a  sufficient basis for a claim that the City retaliated against Walker as alleged in this action.  The first, filed on March 28, 2013, is a lawsuit against New Castle County Code Enforcement, the Department of Land Use, the Community Legal Aid Society, Inc., and employees of those agencies. *Walker v. New Castle Cty. Code Enforcement/Customer Relations*, C.A. No. N13C-03-281 EMD (Del. Super. Mar. 28, 2013).  Walker alleges no connection between the defendants in that case and the City of Wilmington, so there are no facts that would support a reasonable inference of retaliation.  Walker's other pending lawsuit, against the City of New Castle, was filed on September 23, 2013, *after* the alleged retaliation occurred. *Walker v. City of New Castle*, C.A. No. N13C-09-152 EMD (Del. Super. Sept. 23, 2013).

a home for disabled individuals.  Nor has Walker pled facts sufficient to draw a reasonable inference that a causal link exists between one or more of the various legal proceedings to which he, 3D, or the City is a party and the eventual May Evacuation.

Last, Plaintiff alleges that the City evacuated residents of the Home with an "obvious show of intimidation and force," but he has not alleged any facts that suggest that the City's conduct was egregious in any way or is causally related to his protected activity.  Thus, even taking the allegations in Walker's Complaint as true, based on those allegations, the Court cannot make a reasonable inference that, in the course of the evacuation, the City "retaliated" against Walker in violation of the DFHA.  For these reasons, I hold that Plaintiff has failed to state a cause of action for retaliation or intimidation under the DFHA.  Therefore, I dismiss Plaintiff's claim under 6 *Del. C.* §§ 4819 and 4819.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted.  I dismiss with prejudice Count I of the Complaint, which challenged the validity of the violations for which the Home was cited, for lack of subject matter jurisdiction.[96]  I also dismiss with prejudice under Rule 12(b)(6) Count II of

---

[96]    The primary basis for this ruling is that Walker failed to exhaust his administrative remedies to the extent he challenges the propriety of the cited

40

Plaintiff's Complaint, which seeks relief under the DFHA, for failure to state a claim.

　　IT IS SO ORDERED.

---

violations on grounds other than the some form of discrimination prohibited by the DFHA. It appears unlikely that a transfer under 10 *Del. C.* § 1902 would be useful in these circumstances, assuming it would be appropriate at all. Because this issue was not addressed by the parties, however, I express no opinion regarding it.